UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|                                         |   |                          |
|-----------------------------------------|---|--------------------------|
| IN RE:                                  | . | Case No.  11-10219-mew   |
|                                         | . | Chapter 7                |
| KENNETH IRA STARR,                      | . |                          |
|                                         | . |                          |
|                 Debtor.                 | . |                          |
| . . . . . . . . . . . . . . . . . .     | . |                          |
| ROBERT L. GELTZER,                      | . | Adv. Proc. 14-01934-mew  |
| AS CHAPTER 7 TRUSTEE,                   | . |                          |
|                                         | . |                          |
|                 Plaintiff,              | . |                          |
|      v.                                 | . |                          |
|                                         | . |                          |
| JOAN TOBIN and MAURICE TOBIN,           | . |                          |
|                                         | . |                          |
|                 Defendants.             | . |                          |
| . . . . . . . . . . . . . . . . . .     | . |                          |
| ROBERT L. GELTZER,                      | . | Adv. Proc. 14-02065-mew  |
| AS CHAPTER 7 TRUSTEE,                   | . |                          |
|                                         | . |                          |
|                 Plaintiff,              | . |                          |
|      v.                                 | . |                          |
|                                         | . |                          |
| FRED P. HOCHBERG,                       | . |                          |
|                                         | . |                          |
|                 Defendant.              | . |                          |
| . . . . . . . . . . . . . . . . . .     | . |                          |
| ROBERT L. GELTZER,                      | . | Adv. Proc. 14-02394-mew  |
| AS CHAPTER 7 TRUSTEE,                   | . |                          |
|                                         | . |                          |
|                 Plaintiff,              | . |                          |
|      v.                                 | . |                          |
|                                         | . |                          |
| TURNBERRY ASSOCIATES,                   | . |                          |
|                                         | . |                          |
|                 Defendant.              | . |                          |
| . . . . . . . . . . . . . . . . . .     | . |                          |
| ROBERT L. GELTZER,                      | . | Adv. Proc. 14-02395-mew  |
| AS CHAPTER 7 TRUSTEE,                   | . |                          |
|                                         | . |                          |
|                 Plaintiff,              | . |                          |
|      v.                                 | . |                          |
|                                         | . |                          |
| HAROLD EVANS and TINA BROWN             | . |                          |
|                                         | . |                          |
|                 Defendants.             | . |                          |
| . . . . . . . . . . . . . . . . . .     | . |                          |

```
ROBERT L. GELTZER,                    .  Adv. Proc. 14-02396-mew
AS CHAPTER 7 TRUSTEE,                 .
                                      .
                Plaintiff,            .
        v.                            .
                                      .
IM READY MADE LLC,                    .
                                      .
                Defendant.            .
. . . . . . . . . . . . . . . . . . . .
ROBERT L. GELTZER,                    .  Adv. Proc. 14-02397-mew
AS CHAPTER 7 TRUSTEE,                 .
                                      .
                Plaintiff,            .
        v.                            .
                                      .
JACQUELINE SOFFER,                    .
                                      .
                Defendant.            .
. . . . . . . . . . . . . . . . . . . .
ROBERT L. GELTZER,                    .  Adv. Proc. 14-02399-mew
AS CHAPTER 7 TRUSTEE,                 .
                                      .
                Plaintiff,            .
        v.                            .
                                      .
SHELDON FIREMAN and                   .
CAFÉ CONCEPTS, INC.                   .
                                      .
                Defendants.           .
. . . . . . . . . . . . . . . . . . . .
ROBERT L. GELTZER,                    .  Adv. Proc. 14-02400-mew
AS CHAPTER 7 TRUSTEE,                 .
                                      .
                Plaintiff,            .
        v.                            .
                                      .
BROADWAY VIDEO and LORNE MICHAELS,    .
                                      .
                Defendants.           .
. . . . . . . . . . . . . . . . . . . .
```

```
ROBERT L. GELTZER,                  .  Adv. Proc. 14-02413-mew
AS CHAPTER 7 TRUSTEE,               .
                                    .
                Plaintiff,          .
        v.                          .
                                    .
SRJ, INC.,                          .
                                    .
                Defendant.          .
. . . . . . . . . . . . . . . .     .
                                    .
                                    .
ROBERT L. GELTZER,                  .  Adv. Proc. 14-02415-mew
AS CHAPTER 7 TRUSTEE,               .
                                    .
                Plaintiff,          .
        v.                          .
                                    .
SUSAN JAFFE TANE,                   .
                                    .
                Defendant.          .
. . . . . . . . . . . . . . . .     .
                                    .
ROBERT L. GELTZER,                  .  Adv. Proc. 14-02429-mew
AS CHAPTER 7 TRUSTEE,               .
                                    .
                Plaintiff,          .
        v.                          .
                                    .
CHOP CHOP,                          .
                                    .
                Defendant.          .
. . . . . . . . . . . . . . . .     .
                                    .
ROBERT L. GELTZER,                  .  Adv. Proc. 14-02430-mew
AS CHAPTER 7 TRUSTEE,               .
                                    .
                Plaintiff,          .
        v.                          .
                                    .
HARVEY WEINSTEIN,                   .
                                    .
                Defendant.          .
. . . . . . . . . . . . . . . .     .
```

ROBERT L. GELTZER,                    . Adv. Proc. 14-15-01100-mew
AS CHAPTER 7 TRUSTEE,                 .

                Plaintiff,            .
        v.                            .
                                      .
KEITH BARISH,                         .
                                      .
                Defendant.            .
. . . . . . . . . . . . . . .         .
                                      .
ROBERT L. GELTZER,                    . Adv. Proc. 14-15-01104-mew
AS CHAPTER 7 TRUSTEE,                 .
                                      .
                Plaintiff,            .
        v.                            .
                                      .
SARAH B. HRDY, AS TRUSTEE OF          . One Bowling Green
THE CAMILLA ALEXANDRA HRDY            . New York, NY  10004-1408
ART IV C. TRUST, et al,               .
                                      . Wednesday, June 24, 2015
                Defendants.           . 10:39 a.m.
. . . . . . . . . . . . . . .


        TRANSCRIPT OF MOTION TO APPROVE SETTLEMENT STIPULATION;
    ADVERSARY PROCEEDING:  14-01934-MEW GELTZER V. TOBIN ET AL
        MOTION BY TRUSTEE TO APPROVE SETTLEMENT BETWEEN
                    TRUSTEE AND DEFENDANTS;
    ADVERSARY PROCEEDING:  14-01934-MEW GELTZER V. TOBIN ET AL
                    PRE-TRIAL CONFERENCE;
                        (CONTINUED)
            **BEFORE THE HONORABLE MICHAEL E. WILES**
            **UNITED STATES BANKRUPTCY COURT JUDGE**



APPEARANCES CONTINUED


Audio Operator:          K. Harris, ECRO

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46038
                         (855) 873-2223
                         www.accesstranscripts.com



Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

TRANSCRIPT OF (CONTINUED)
ADVERSARY PROCEEDING: <u>14-02065-MEW</u> GELTZER V. HOCHBERG
PRE-TRIAL CONFERENCE;
ADVERSARY PROCEEDING: <u>14-02394-MEW</u> GELTZER V. TURNBERRY
ASSOCIATES, PRE-TRIAL CONFERENCE;
ADVERSARY PROCEEDING: <u>14-02395-MEW</u> GELTZER V. EVANS ET AL
PRE-TRIAL CONFERENCE;
ADVERSARY PROCEEDING: <u>14-02396-MEW</u> GELTZER V. IM READY MADE LLC
PRE-TRIAL CONFERENCE;
ADVERSARY PROCEEDING: <u>14-02397-MEW</u> GELTZER V. SOFFER
PRE-TRIAL CONFERENCE;
ADVERSARY PROCEEDING: <u>14-02399-MEW</u> GELTZER V. FIREMAN ET AL
PRE-TRIAL CONFERENCE;
ADVERSARY PROCEEDING: <u>14-02400-MEW</u> GELTZER V. BROADWAY VIDEO
ET AL, PRE-TRIAL CONFERENCE;
ADVERSARY PROCEEDING: <u>14-02413-MEW</u> GELTZER V. SRJ, INC.
PRE-TRIAL CONFERENCE;
ADVERSARY PROCEEDING: <u>14-02416-MEW</u> GELTZER V. JAFFE TANE
PRE-TRIAL CONFERENCE;
ADVERSARY PROCEEDING: <u>14-02415-MEW</u> GELTZER V. JAFFE TANE
MOTION BY DEFENDANT TO DISMISS COMPLAINT;
ADVERSARY PROCEEDING: <u>14-02429-MEW</u> GELTZER V. CHOP CHOP
PRE-TRIAL CONFERENCE;
ADVERSARY PROCEEDING: <u>14-02430-MEW</u> GELTZER V. WEINSTEIN
PRE-TRIAL CONFERENCE;
ADVERSARY PROCEEDING: <u>14-01100-MEW</u> GELTZER V. BARISH
PRE-TRIAL CONFERENCE;
ADVERSARY PROCEEDING: <u>15-01104-MEW</u> GELTZER V. SARAH B. HRDY,
AS TRUSTEE OF THE CAMILLA ALEXANDRA HRDY ART IV C. TRUST
PRE-TRIAL CONFERENCE

APPEARANCES:  (Continued)

Chapter 7 Trustee:          Law Offices of Robert L. Geltzer
                            By:  ROBERT L. GELTZER, ESQ.
                            1556 Third Avenue
                            New York, NY  10128
                            (212) 410-0100


For the Trustee:            Law Offices of Robert L. Geltzer
                            By:  MARK E. BRUH, ESQ.
                            1556 Third Avenue
                            New York, NY  10128
                            (212) 410-0100


                            Tarter Krinsky & Drogin
                            By:  ROBERT A. WOLF, ESQ.
                                 GREGORY J. SKIFF, ESQ.
                            1350 Broadway, 11th Floor
                            New York, NY  10018
                            (212) 216-8000

APPEARANCES:  (Continued)

For Chop Chop and          Fox Rothschild, LLP
Harvey Weinstein:          By:  KATHLEEN AIELLO, ESQ.
                           100 Park Avenue, Suite 1500
                           New York, NY  10017
                           (212) 878-7900


For Harold Evans:          Boies, Schiller & Flexner, LLP
                           By:  SCOTT E. GANT, ESQ.
                           5301 Wisconsin Avenue, N.W.
                           Washington, DC  20015
                           (202) 237-2727


For Susan Jaffe Tane:      The Solovay Practice
                           By:  NORMAN SOLOVAY, ESQ.
                           260 Madison Avenue, 15th Floor
                           New York, NY  10016
                           (646) 278-4295

TELEPHONIC APPEARANCES:

For Keith Barish:          Bilzin Sumberg Baena Price & Axelrod
                           By:  JEFFREY I. SNYDER, ESQ.
                                SCOTT BAENA, ESQ. (Telephonic)
                           1450 Brickell Avenue, Suite 2300
                           Miami, FL  33131
                           (305) 375-6148


For Harold Evans:          Boies, Schiller & Flexner, LLP
                           By:  COLLEEN A. HARRISON, ESQ.
                           26 South Main Street
                           Hanover, NH  03755
                           (603) 643-7914


For Turnberry Associates,
Jacqueline Soffer, and     Kelley Drye & Warren LLP
Maurice and Joan Tobin:    By:  JASON ALDERSON, ESQ.
                           101 Park Avenue
                           New York, NY  10178
                           (212) 808-7800

ALSO APPEARING:

From The Weinstein         CHARLIE PRINCE, Vice President
Company:                   375 Greenwich Street, 3rd Floor
                           New York,  NY  10013
                           (212) 590-7883


Regarding the              MITCHEL V. CRANER
Hrdy matter:               60 East 42nd Street
                           New York, NY

1     (Proceedings commence at 10:38 a.m.)

2          THE COURT:  <u>Kenneth Starr</u>.

3          MR. GELTZER:  Morning, Your Honor.  I'm Robert L.

4     Geltzer, the trustee, and my firm is counsel to me as trustee.

5     This is the first time I have the honor of appearing before

6     you, so I'd like to welcome you to the bench, Your Honor.

7          THE COURT:  Thank you.

8          MR. GELTZER:  Your Honor, as you know, we have

9     several adversary proceedings.  Tell me if you would, please,

10    do you want them handled in the numerical order as they appear

11    on the agenda that was sent to you or do you want Mr. Wolf and

12    Mr. Bruh from my office to be going up and down?  Whatever your

13    preference is.

14         MR. BRUH:  Because certain of the hearings are

15    handled by us, I'll --

16         MR. GELTZER:  Yeah.  How would you like it done?

17         THE COURT:  Do it whatever way is most efficient for

18    the attorneys who need to speak, so --

19         MR. GELTZER:  Okay.  Then we'll begin with Mr. Wolf,

20    but you may want other appearances.

21         THE COURT:  We'll take appearances as people speak.

22         MR. GELTZER:  Okay, thank you.

23         THE COURT:  Thank you.  Mr. Wolf.

24         MR. WOLF:  Good morning, Your Honor.  Robert A. Wolf,

25    Tarter Krinsky & Drogin.  We are special litigation counsel to

1 the trustee.  Also with me from my office, Your Honor, this

2 morning near the table, Gregory Skiff --

3          MR. SKIFF:  Morning, Your Honor.

4          THE COURT:  Good morning.

5          MR. WOLF:  -- and I'm going to also introduce to Your

6 Honor a summer associate working with our program this summer,

7 Rachel Klein, who's going through her third year of Cardozo Law

8 School.

9          THE COURT:  Good morning.

10          MR. WOLF:  Your Honor, if I may, I'd like to address

11 the first matter on the agenda, which is a Rule 9019 motion for

12 approval by Your Honor of a settlement in excess of $865,000

13 relating to a state court litigation brought on behalf of the

14 trustee against 170 East End Avenue, LLC.

15          Very quick background, Your Honor.  The debtor,

16 Kenneth Starr, had made a downpayment several years prior to

17 the petition date in the amount of $1.39 million for the

18 purchase of a condominium unit, penthouse condominium unit, up

19 on East End Avenue on the upper east side of Manhattan.  He did

20 that through an entity called Pastar, P-A-S-T-A-R, LLC, which

21 he was the 100-percent owner of.  So upon the filing of the --

22 of his petition and him being judged a debtor, the 100-percent

23 membership interest in Pastar became an asset of the estate.

24          There was a dispute with regard to the purchase

25 contract for that condominium.  Mr. Starr took the petition

1  that noise emanating from rooftop structures of the building

2  were in excess of the New York City noise code and were

3  preventing him from having quiet enjoyment of what was to be

4  his condominium unit.  There was an actual expert report

5  prepared by a noise expert that he had retained.  The

6  condominium owner/seller also had its own report done, which

7  was in conflict, of course, with that of Mr. Starr.

8          THE COURT:  What a surprise.

9          MR. WOLF:  What a surprise.  The money -- the

10 downpayment was held in escrow.  Mr. Starr refused to close on

11 the contract.  The condominium developer, which was the seller

12 under the unit, took the position that the contract was

13 terminated and had retained the downpayment.  The downpayment

14 has been held actually in the escrow account of the seller's

15 attorneys, Stroock & Stroock & Lavan, for a number of years now

16 and has accrued interest.  It's up in excess of 1.4 million

17 now.

18         We brought the lawsuit on behalf of the trustee in

19 state supreme court.  We are counting.  There was an answer to

20 the complaint.  The defendant started a counterclaim for

21 declaratory judgment.  It was entitled to retain the

22 downpayment.  We had brief exchange of document discovery

23 before the depositions had even begun.  We started settlement

24 negotiations, and those negotiations culminated in the

25 agreement whereby the estate will receive 60 percent, six-oh

1 percent, of the downpayment amount, which amount now, with

2 interest accruing, to in excess of $865,000.

3         We're avoiding any further discovery.  We're avoiding

4 motion practice.  We're avoiding a likely trial where there

5 would be a battle between the noise experts.  We submit this is

6 a very beneficial settlement for the estate without the need to

7 incur any further litigation expenses.  There has been no

8 opposition to the motion, and we would ask Your Honor to

9 approve the settlement.

10         THE COURT:  Okay.  Does anybody else wish to be heard

11 as to this motion?  All right.  I will -- oh, I'm sorry.  Is

12 there anybody on the phone who wishes to be heard?

13     (No audible response)

14         THE COURT:  All right.  I'm prepared to approve the

15 settlement.

16         MR. WOLF:  Thank you, Your Honor.  May we submit an

17 order --

18         THE COURT:  Yes.

19         MR. WOLF:  -- by email to chambers?  Thank you very

20 much, Your Honor.

21         There are two other settlements through 9019 motions

22 this morning, and with Your Honor's permission, Mr. Bruh will

23 address those.

24         THE COURT:  Okay.

25         MR. BRUH:  Your Honor, for the record, Mark Bruh for

1  Robert Geltzer, Chapter 7 trustee.  Our firm has several

2  matters next, so I'll go through all those, the first of which

3  is the settlement pursuant to Rule 9019 against Maurice and

4  Joan Tobin, 14-01934.  This settlement is for $15,000.  Those

5  funds have been paid to the estate.

6         The background here is we had brought the adversary

7  proceeding seeking $100,000 in connection with unpaid

8  receivables owed to the debtors.  At first, she was joined and

9  we exchanged documents informally with the defendant's counsel.

10 It was learned that this -- the receiver in this case, before

11 it came into bankruptcy, had pursued this receivable and had

12 reached a settlement with these defendants, but the defendant

13 alleges it was a global settlement.  The receiver was settling

14 a claim of $50,000, not $100,000.

15        So in light of that, we -- I had discussions with the

16 defendant.  We actually exchanged its position statements,

17 briefing accord and satisfaction.  We went over the issue of

18 was this a global settlement, did it encompass the full amount

19 or not, and ultimately we disagreed, but we agreed we should

20 settle it so we didn't have to incur further costs in the case.

21        The motion has been served on all parties in

22 interest.  There's been no opposition.  We ask that Your Honor

23 approve this settlement.

24        THE COURT:  Okay.  Anybody wish to be heard on this?

25    (No audible response)

1          THE COURT:  All right.  Submit an order.  I'm

2   prepared to approve it.

3          MR. BRUH:  Thank you, Judge.

4          The next settlement, Your Honor, I just listed it in

5   the settlement book.  It is not on for today.  It's on for a

6   July 21st return date in the adversary 14-02399, but it's on

7   the Court's calendar for a pretrial.  So those papers have been

8   filed, served, and we have that return date cleared with your

9   chambers.

10         Return to the second prong on our agenda, the matters

11  settled in principle, and these matters are also on the Court's

12  calendar for pretrial conferences.  The motions have not been

13  filed.  Certain of them have been prepared.  Let me go through

14  them.

15         The first one is 14-02065 against Fred Hochberg.  The

16  settlement is for $10,000, and I'll do a further -- I will tell

17  the Court more when we file the motion before Your Honor.

18  Excuse me, I can tell --

19         THE COURT:  Is that going to be on the same date as

20  the last?

21         MR. BRUH:  We will try to put that on the 21st.  I

22  can tell you the check is in the mail and the stip has been

23  signed.  I was emailed a PDF of both of those, so we can get

24  the motion filed next week.  I believe that we can use the 21st

25  return date.

1          THE COURT:  Okay.

2          MR. BRUH:  The next two matters are related matters,

3  the <u>Turnberry Associates</u> and <u>Soffer</u>.  Those matters will be --

4  if the Court allows us to be put on this July 21st date.

5          THE COURT:  <u>Turnberry</u> and which other one?

6          MR. BRUH:  The one below it, <u>Jacqueline Soffer</u>.

7          THE COURT:  Okay.

8          MR. BRUH:  We have received the settlement funds.

9  The stip has been signed and the motions, I believe, are to be

10  served this week, so it will be able to be put on the 21st with

11  the firing matter.

12          THE COURT:  Okay.

13          MR. BRUH:  The last matter, <u>Broadway Video</u>, we

14  settled that one in principle.  I received comments to the

15  stipulation of settlement.  I just have to circulate it back to

16  the defendant, make sure we agree on just the payment terms and

17  certain reliefs.  I'm confident that'll get done.  I'm not so

18  sure that I'll be able to put this one on for the 21st, so if

19  not, I'll contact your chambers and get another date --

20          THE COURT:  Okay.

21          MR. BRUH:  -- for the future.

22          This is the part, Your Honor, now that we're just

23  going to jump a bit, and the next matter that our office is

24  handling are the -- are also two related matters, 14-02429 and

25  14-02430, <u>Chop Chop</u> and <u>Harvey Weinstein</u>.  Counsel for the

1 defendants are here, so they want to put their name on the

2 record.

3          MS. AIELLO:  Good morning, Your Honor.  Kathleen

4 Aiello from Fox Rothschild.  We're counsel of record to both

5 Chop Chop and Harvey Weinstein.  With me today in the court is

6 Charlie Prince, who is an attorney for the Weinstein Company.

7          MR. PRINCE:  Good morning.

8          THE COURT:  Good morning.

9          MR. WOLF:  Your Honor, I thought we were going to be

10 able to settle these matters.  One, we were contemplating a

11 dismissal of the Chop Chop -- Chop Chop is related into the

12 Weinstein matter -- after we exchanged documents informally and

13 it was learned that the claim of Chop Chop was perhaps subsumed

14 in the Weinstein matter, so we were trying to resolve both of

15 these.  Just the other day, settlement talks broke down in this

16 matter.  I note discovery pursuant to the Court's order ended

17 June 16th, so we're prepared to go forward and go to trial in

18 this matter because I don't think it can be resolved.

19          And if you want to hear from defense counsel --

20          THE COURT:  Okay.  Did I or somebody before me give

21 you a specific date for a final pretrial conference or trial

22 dates, anything?

23          MR. WOLF:  We have not.  The scheduling order said

24 discovery ends June 16th provided there's good cause, and we'd

25 like to argue for good cause to extend it, Your Honor, which we

1 are ready to go to trial, once again.

2          THE COURT:  Okay.  I'll hear from the defendants.

3          MR. PRINCE:  Your Honor, I'm Charlie Prince.  I work

4 for Harvey Weinstein.

5          Your Honor, settlement discussions have been ongoing

6 and we've exchanged documents informally, as Mr. Bruh

7 mentioned.  We'd hoped to be further along in our settlement

8 discussions at this point in reaching a resolution.  Of course,

9 that didn't happen.  We've only just answered, and with your

10 permission, we'd like to request additional time for discovery.

11          THE COURT:  When was the lawsuit commenced?

12          MS. AIELLO:  Your Honor, the lawsuit was first

13 commenced in December of last year, 2014.  Yes, and the answer

14 was filed in late May.

15          THE COURT:  Okay.  And the order that scheduled a

16 discovery cutoff of June 16th, when was that entered?

17          MR. WOLF:  Your Honor, if I may, that was entered

18 subsequent to the last pretrial conference in March, so I would

19 say probably April.  I had informed the Court at that time

20 there had been ongoing informal discovery between the parties

21 in these matters.

22          THE COURT:  And has any discovery happened at all?

23          MR. PRINCE:  We've exchanged some documents

24 informally.

25          MR. WOLF:  I have been served discovery demands.

1 | They were held in abeyance.  We thought the case would be
2 | settled.  I have received some documents informally, but I
3 | don't think the matter is going to reach a settlement based on
4 | my last discussions with counsel.

5 | THE COURT:  And how much discovery do you think you
6 | need to do?

7 | MR. PRINCE:  Your Honor, we would request 90 days for
8 | fact discovery, and I don't think we need more than 30 days for
9 | expert discovery.  We anticipate there would be some
10 | depositions as part of this, and I know it's the summer months,
11 | that could be difficult to schedule.

12 | THE COURT:  What's the amount that's being sought in
13 | this case?

14 | MR. PRINCE:  Twenty-five thousand, Your Honor.

15 | THE COURT:  Okay.  I'm not going to give you 90 days
16 | and 30 days for a $25,000 case, but I'll give you an extra 45
17 | days to do whatever you need to do, and then we'll have another
18 | conference and then we'll schedule this for trial.

19 | MR. PRINCE:  Thank you, Your Honor.

20 | THE COURT:  Okay.  So submit an order that gives you
21 | until the beginning of August to finish your discovery, all
22 | discovery, and work together to get that done.  And then we'll
23 | have a conference -- we'll have a pretrial conference on August
24 | 11th.

25 | MR. WOLF:  Your Honor, could I just check my calendar

1  --

2          THE COURT:  Yeah.

3          MR. WOLF:  -- for freedom of that date?  That's fine,

4  Your Honor.  I -- Your Honor, if I may, that'll be the holding

5  date for all these matters going forward?  Some of these will

6  be adjourned, as well.

7          THE COURT:  We could probably do that, yes.

8          MR. WOLF:  Okay.

9          MS. AIELLO:  Thank you, Your Honor.

10         THE COURT:  Okay.  Anything else?

11         MR. WOLF:  Your Honor, then just jumping forward to

12  the last page, around four defendants in default.  So I had

13  before Your Honor two notices of presentment for default

14  judgments in these matters.  I had told them before they were

15  going to be signed by Your Honor.

16         The first one, 14-02396, IM Ready, LLC, what happened

17  here was the default -- the notice of presentment of default

18  judgment came back to me "Return to Sender," no good address,

19  but it's all prior correspondence, that address was good

20  service.  So in an abundance of caution, I did not want to

21  obtain a judgment now that I might not have given prior notice

22  to this defendant.  But like I said, the complaint --

23  everything I've done in this case, I never had a problem with

24  the address for years.  And in fact, I had spoken to this

25  defendant and I did have informal discovery where I sent over

documents supporting our claim, after which they stopped talking to me. So I need to -- a little more time to do a little more research in this, and we would ask to adjourn this matter to that August date.

The second one, 14-02413, SRJ, this matter, I pulled because prior to the Court signing the default judgment, a representative, a business manager of the defendant contacted our office. We've exchanged documents. We've also exchanged settlement offers. So I'm confident this one will be resolved, so I'd also ask if we could just adjourn this one to that August date, as well.

THE COURT: Okay.

MR. WOLF: And that concludes, at least, the matters being held solely by -- being handled solely by our office, Your Honor.

THE COURT: Okay.

MR. SKIFF: Morning, Your Honor. My name is Gregory Skiff. I'm here on behalf of the Chapter 7 trustee in the Starr matter, as well. I'm referring Your Honor to the notice of agenda that was filed yesterday with respect to the first matter under 0.3, pretrial conferences. It's Adversary Proceeding Number 14-02395, and that is the matter versus Harold Evans and Tina Brown.

The amount in controversy in that matter is $98,410.19. There has been extensive amount of discovery

1  between the parties.  We've exchanged thousands of pages of

2  documents up until as late as last night, Your Honor.  There

3  has also been approximately eight depositions that have been

4  taken, and the parties have exchanged settlement offers,

5  although there have not been -- there has not been an agreement

6  as of yet.

7          If opposing counsel would like to make his appearance

8  for the record.

9          MR. GANT:  Good morning, Your Honor.  Scott Gant from

10  Boies, Schiller and Flexner for the defendants, Mr. Evans and

11  Ms. Brown.  My colleague, Colleen Harrison should be maybe on

12  the telephone.

13          THE COURT:  Okay.

14          MR. GANT:  You know, we're here for our status

15  report, Your Honor.  Mr. Skiff is correct, the discovery

16  deadline in the case ended two days ago, this past Monday.  We

17  have completed discovery and substantially all of discovery

18  issues have been resolved.  As Mr. Skiff mentioned, there have

19  been efforts to engage in settlement.

20          There is $98,000 at issue, as well as the threat of

21  attorney's fees and costs, which of course are of concern to my

22  clients.  There is great reluctance on the part of my clients

23  to settle the case because there is, I think, no meaningful

24  dispute that there was an oral agreement between Mr. Starr and

25  Mr. Evans.  They would not have to pay any more fees to Starr &

1  Company.  We had several depositions that have corroborated

2  that, as well as documents which also support that position,

3  and our client is willing to pay because of the risk that they

4  have that there will be a judgment and also the imposition of

5  attorney's fees and costs.  However, there's a limit to what

6  they're willing to do, and they feel, in their words -- Mr.

7  Evans testified to this in his deposition -- like they're being

8  extorted.  There is really no dispute that there was an

9  agreement not to pay and that Mr. Starr had the authority to

10 make that oral agreement between the defendants and Starr &

11 Company.

12         MR. SKIFF:  Just to speak to that, Your Honor.  There

13 absolutely is a dispute as to whether or not there's an

14 agreement between Starr & Company and Harold Evans and Tina

15 Brown that they would not have to pay for any services

16 rendered, and I believe that as a result of the discovery

17 that's been exchanged between the parties and the depositions

18 that have been taken, it is far from certain whether such an

19 agreement even existed, and to the extent an agreement did

20 exist, to what services they pertain to and that -- for what

21 period of time such an agreement would relate to.

22         THE COURT:  All right.  How long a trial do you think

23 you'll have?

24         MR. GANT:  Your Honor, if the case is tried, we think

25 it'll be done in two days.

1          THE COURT:  Do you agree with that?

2          MR. SKIFF:  I would agree with that, Your Honor.

3          THE COURT:  Does it need two days?

4          MR. GANT:  It may take less, but you know better than

5   we do, Your Honor, how these things tend to take longer than

6   one expects, and I'm notoriously underestimating, so --

7          THE COURT:  I've also -- I'm also learning very

8   quickly that they tend to take whatever time is allotted to

9   them.

10         MR. GANT:  That's fair enough, Your Honor.  It may be

11  that we could do it in one day.  It really -- it depends on

12  who's on the witness list of each side, which of course, we

13  don't know yet.

14         THE COURT:  Yes.

15         MR. GANT:  We took the depositions of everyone that

16  was on the initial disclosures of the other side, which is --

17  and they took depositions of the two defendants and the

18  personal assistant of the defendants, which is how we got to

19  eight.  But I think several of those witnesses have no relevant

20  information, so it may be that we could do it in fewer than two

21  full days.

22         THE COURT:  Okay.  I'm going to direct you to submit

23  a joint pretrial order on July 9th.  We'll have a final

24  pretrial conference on July 21st at 10 a.m.

25         MR. GANT:  I'm sorry, what was the date?

1          THE COURT:  July 21st.  And how does July 30th look

2  like as a trial date?

3          MR. SKIFF:  Excuse me, Your Honor.  May I check my

4  schedule?

5          THE COURT:  Yeah.

6          MR. GANT:  I believe that's fine, Your Honor.  If it

7  turns out that there is an issue, if I could contact chambers.

8          MR. SKIFF:  That's fine also, Your Honor.

9          THE COURT:  Good.  Okay.

10          MR. GANT:  The only thing I wanted to mention, Your

11  Honor, in candor is that I'm discussing with my clients the

12  possibility of filing a motion for summary judgment.  I presume

13  that if the client elects to proceed in that manner that you

14  would want to postpone the trial date.  Perhaps that's not

15  correct.

16          THE COURT:  I would only postpone the trial date if I

17  decided to grant summary judgment.

18          MR. GANT:  Okay.  Well, we'll make sure, if we file

19  one, that we have it filed in time for you to consider it in

20  advance of the trial date.

21          THE COURT:  Thank you.

22          MR. GANT:  Thank you, Your Honor.

23          MR. SKIFF:  Your Honor, next, I'll refer you to

24  Adversary Proceeding Number 14-02446.  This is the matter

25  versus Annie Liebovitz and her affiliated entities.

1        This action is -- the amount at controversy is

2   $1,035,096.  There has been a motion to dismiss filed, and it's

3   scheduled for a hearing on July 23rd, 2015.  I believe the

4   response from the Chapter 7 trustee is due in mid-July.

5        Your Honor, we understand that the discovery schedule

6   is not stayed pursuant to the rules in this court when a motion

7   to dismiss is filed, but if Your Honor would like to put -- for

8   us to put off discovery while the motion is pending, we would

9   just ask that we be given 90 days from the date it's heard to

10  conduct discovery.

11        THE COURT:  Are you asking to postpone discovery?

12  Has the other side asked to postpone discovery?

13        MR. SKIFF:  We have -- there's no discovery schedule

14  at this time, so --

15        THE COURT:  Oh, okay.  There's no scheduling order in

16  that matter at this point?

17        MR. SKIFF:  No.

18        THE COURT:  All right.  Well, we'll just -- let's

19  just hear the motion in July, and then we'll decide --

20        MR. SKIFF:  Okay.

21        THE COURT:  -- what to do.  I see you have July 23rd.

22  We may move that to July 21 to put you on the same date as your

23  other matters.

24        MR. SKIFF:  Okay.  Okay.  The next matter, Your

25  Honor, is Adversary Proceeding 15-01100, and that's versus

1 <u>Keith Barish</u>.  The amount at controversy is $341,641.29.

2 There, as well, a motion to dismiss has been filed and it's

3 scheduled to be heard on July 1st, 2015.  Again, there's no

4 discovery schedule in effect, Your Honor, so if you would

5 like --

6          MR. SNYDER:  Good morning, Your Honor.  This is

7 Jeffrey Snyder with Bilzin Sumberg on behalf of the defendant

8 in this adversary proceeding, Keith Barish, and with me on the

9 phone this morning is my partner, Scott Baena.

10          THE COURT:  Okay.  Good morning.

11          MR. SNYDER:  Good morning.

12          THE COURT:  All right.  So this one's scheduled for

13 July 1st, did you say?

14          MR. SKIFF:  Yes.

15          MR. SNYDER:  Your Honor, I think it would be our --

16 the defendant's view that an adjournment of 60 or 90 days of

17 this status conference would make sense given all the possible

18 outcomes of the motion to dismiss.  Again, there's been no

19 initial disclosures or discovery conference, and obviously we

20 think -- you know, we think based on the attachments to the

21 complaints and their inability to tell us what services were

22 allegedly provided, that the quantum meruit claim and the

23 accounts abated claim fail on their face.

24          MR. SKIFF:  Your Honor, we would have no objection to

25 that.

1          THE COURT:  And I'm -- but I'm unclear.  Have I

2   issued a scheduling order on this one already?

3          MR. SKIFF:  You have not.

4          MR. SNYDER:  No, Your Honor.

5          THE COURT:  And what is the request for now, to

6   postpone the motion to dismiss or just postpone --

7          MR. SNYDER:  No.  No, Your Honor, just to roll the

8   status conference until perhaps the September 22nd date that

9   you mentioned earlier.

10          THE COURT:  Well, if you're coming in on July 1st, we

11   won't schedule anything else until we have that argument, and

12   then we'll decide what to do then.

13          MR. SNYDER:  That makes sense.

14          THE COURT:  Okay?

15          MR. SKIFF:  Your Honor, the next matter is Adversary

16   Proceeding Number 15-01104.  This is versus the H-R-D-Y, and

17   it's a number of trusts, as well as I believe three entities.

18   The amount at controversy there is $13,212.50.  An answer has

19   been filed and -- but there has -- and the complaint was filed

20   on May 1st, 2015, and the answer was filed thereafter.  There's

21   no scheduling order for that matter.

22          THE COURT:  Okay.

23          MR. CRANER:  Your Honor, I'm here on the Hrdy matter.

24   Mitchel V. Craner, 60 East 42nd Street, New York, New York

25   10165.  Good morning, Judge.

1          THE COURT:  Good morning.  All right.  I think I --

2    you know the scheduling orders that I've been entering in these

3    things, so if you'd just submit a proposed scheduling order

4    with that -- with the usual parameters, I'll enter it.

5          MR. SKIFF:  Okay.  Thank you, Your Honor.

6          THE CLERK:  What date (indiscernible)?

7          THE COURT:  I'm sorry?

8          THE CLERK:  What date (indiscernible)?

9          THE COURT:  That'll depend on what the scheduling

10   order says, so as part of the scheduling order, just put in the

11   usual -- I usually allow three months for discovery of these,

12   and just put in a date in September when you want to have the

13   next conference.

14         MR. SKIFF:  Okay.  Thank you, Judge.

15         THE COURT:  Okay.  I think we already gave you a date

16   in September for something else, so you might want to pick that

17   same date.

18         MR. BRUH:  Your Honor, I know we have the August 11th

19   date.  I didn't know what September date.

20         THE COURT:  Okay.  I probably gave September to

21   somebody else.

22         MR. SKIFF:  Next, Your Honor, under .5, arbitration,

23   there's just one matter there, Adversary Proceeding Number

24   14-01935.  This is versus Ginley.  The amount at controversy

25   there is $146,900.  There is a stipulation and order

1  compelling --

2          THE COURT:  I'm sorry, which one is this?  I'm not

3  finding it on my --

4          MR. SKIFF:  It's on the last page, Your Honor --

5          THE COURT:  You're looking at a different --

6          MR. SKIFF:  -- of the notice of agenda that was filed

7  yesterday.

8          MR. BRUH:  Your Honor, it wouldn't technically, I

9  guess, be on the Court's calender because it's been punted over

10  to arbitration, but as a status conference as to all --

11          THE COURT:  Okay.

12          MR. BRUH:  -- matters pending, we thought to put it

13  on our agenda.

14          THE COURT:  So what's happening in that one?

15          MR. SKIFF:  Your Honor, the parties were endeavoring

16  to commence the arbitration proceeding, but it -- we became

17  aware that some of the concerns that the defendant's counsel

18  had had been alleviated, and so we think we may be able to

19  stipulate to have the matter heard as -- in an adversary

20  proceeding in this court.  If that's possible, we would try and

21  do that.  And so, you know, we will obviously let the Court

22  know as soon as possible if that is a possibility.  If not, the

23  parties will just go forward with the arbitration.

24          THE COURT:  Okay.

25          MR. SKIFF:  Lastly, Your Honor, turning back to .3

1  under pretrial conferences, Adversary Proceeding Number

2  14-02415, this is versus <u>Susan Jaffe Tane</u>.  The amount in

3  controversy is $12,000, and there has been a motion to dismiss

4  filed.  The oral argument is on for today, and my colleague,

5  Bob Wolf, will be handling the oral argument on that.

6       THE COURT:  Okay.  Let's just hold that for a second

7  because there's only one other matter that I don't think is

8  going to take very long that we might as well get out of the

9  way, the <u>George Liakeas</u> case.

10      (Recess taken at 11:10 a.m.)

11      (Proceedings resume at 11:12 a.m.)

12      THE COURT:  All right.  Let's go back to the <u>Susan</u>

13  <u>Tane</u> matter.

14      MR. SOLOVAY:  Good morning, Your Honor.  I guess it's

15  still morning.

16      THE COURT:  Still morning, yes.

17      MR. SOLOVAY:  I don't know whether Your Honor has had

18  a chance to read all the papers.

19      THE COURT:  I did.

20      MR. SOLOVAY:  Okay.  Then I won't show them.  I'm --

21  the motion was originally based on a deposition of Peter Lev,

22  which is attached to the motion, one of the managing directors

23  of Starr who handled --

24      THE COURT:  Can you speak a little louder?

25      MR. SOLOVAY:  -- managing director of Starr who

1 handled Ms. Tane's matters and the matters of several other

2 clients that I referred to him.  Our business -- our

3 arrangement by then was not a business arrangement.  We were, I

4 would say -- well, I would say friends.  I had helped him and

5 his brother, as I think you know, end their partnership in Long

6 Island, freeing Ken Starr to come here.  I remained friendly

7 with him.  I think it was -- I could have done some work, legal

8 work for him, but if so, it was minimal, but I did make the

9 mistake of referring a number of clients to him.

10          I myself lost about a half-million dollars from a

11 favor he did me, but I was never a full investor

12 (indiscernible).  But the deposition of Peter Lev I think

13 provides more than enough grounds to dismiss this case.

14          THE COURT:  But how is that a motion to dismiss --

15          MR. SOLOVAY:  Yeah.

16          THE COURT:  -- as opposed to a motion for summary

17 judgment?

18          MR. SOLOVAY:  It really should have been a motion for

19 summary judgment.  You're quite right, Your Honor, and I think

20 that's a mistake in the motion.  But to let you know what is

21 involved in it, the dep -- and in terms of depositions, which

22 by the way they are now seeking along with extensive discovery,

23 despite the fact that they cross-examined -- everything that

24 Ms. Tane knows was disclosed at this deposition, including all

25 the documents that she had.

1            THE COURT:  Has she testified?

2            MR. SOLOVAY:  No, she hasn't testified.  Peter -- and

3 if she did testify, all she would testify is that these were

4 the documents.  They cross-examined her for probably -- not

5 quite as long.  It's -- if you look at the deposition

6 transcript, the cross-examination starts about I'd say a little

7 less timely than mine.

8            THE COURT:  The witness who testified, how do you

9 pronounce his name, Lev?

10            MR. SOLOVAY:  Lev, L-E-V.

11            THE COURT:  Lev.

12            MR. SOLOVAY:  And he testified to an assortment of a

13 rather unusual sampling, which I think is very compelling.  He

14 had some ten cases that he was handling after people who had

15 been referred to him, like the clients of mine who came with

16 him.  And he had shown in this rather, well, meaningful sample

17 that three of the cases were totally phony, that they had been

18 paid.  He came up with several other cases that were highly

19 questionable, so as a pretty interesting sample -- and I, by

20 the way, can give you a sample of one more --

21            THE COURT:  Does Mr. Lev do work for Ms. Tane now?

22 Is he --

23            MR. SOLOVAY:  No, she does not.  She does -- just

24 full disclosure, he does represent a client -- at least one

25 client of mine, a former client who uses his services, and I

think he felt compelled to test -- he was not a happy camper

testifying, as he may have said in the deposition, and he

corrected me on a number of things.  But what he was very clear

about was that these books are cooked and that they were never

-- in the case of my client, what happened was that she had

lost about a million dollars as it turns out.  And as he was

getting out -- started getting out, you know, sending back to

her family money manager, fiduciary trust, it took a while for

her to get out.  She had directed stop the music to Peter, and

he had agreed, and he had told Ken Starr that the billing that

she received the next year was totally inappropriate.

But not only was it inappropriate, but it was totally

the wrong amount because by then she had lost close to a

million, so the billing was based on her original investment

percentage, and it was even sent to the wrong address.  They

didn't change the address.  They just kept going with the

cooked books, and Lev was very clear on that part about how he

and others by 2010 were very, very well aware that the books

were cooked.

And he had many, many complaints to Starr about it.

He had gone to Starr and told him several times that the

billing to my client, to Ms. Tane, was inappropriate.  They

didn't pay any attention, and obviously you know the reason

why.  He was in big trouble at that time.

THE COURT:  Well, I did read through the testimony.

1 Maybe the books were cooked as to your client. I don't know.

2 I'm not prepared to find that every single record that was ever

3 created at Starr was a forgery.

4          MR. SOLOVAY: Of course not.

5          THE COURT: I don't think anybody went that far in

6 their testimony. And so I don't see how I could dismiss this

7 case based on that deposition, which is factual matter. I need

8 to have a hearing, and if you want to cut off discovery, that

9 doesn't seem appropriate to me. You may believe that Ms. Tane

10 has nothing to add, but the trustee is entitled to hear that

11 from Ms. Tane herself and to pursue it. If you think that the

12 trustee is pursuing something that the trustee should have

13 abandoned, I'll hear that application then.

14          MR. SOLOVAY: I don't think it; I know it, Your

15 Honor.

16          THE COURT: Yeah. I'll hear -- if that's what you

17 think once discovery is done, I'll hear that application at an

18 appropriate time, but I'm not going to tell the trustee that,

19 based on what's happened so far, he has to stop.

20          MR. SOLOVAY: Well, Your Honor --

21          THE COURT: I don't know all the facts. I don't know

22 the accounting records that the trustee has seen. I don't know

23 what's prompting the trustee to proceed. I don't have the

24 basis to say based on Rule 11 today that the entire thing needs

25 to come to an end. I think -- hopefully, if your client

1  doesn't have any other documents, that all that should be left

2  then is a simple deposition, and then this case can be ready

3  for trial.

4        MR. SOLOVAY:  That's true, but I do have -- I may

5  have goofed, and I did on the notice of motion for dismissal as

6  opposed to summary judgment, but I think I have presented a

7  motion that Your Honor could and should entertain, at least at

8  the time as you have the other hearing.  That is a motion under

9  Section 487 of the New York Judiciary Law against the trustee's

10 law firm, and I think there's going to be a good bit of

11 evidence to the effect that they have deliberately ignored

12 showings, concrete showings, that the matters they are pursuing

13 are rigged.

14        To go back to cooked books, I think that you'll find

15 a lot of evidence that they have ignored and shoved aside

16 evidence that these books -- I mean, look, for example, here as

17 to Susan Tane --

18        THE COURT:  I would need to have a factual hearing on

19 that, and it is not something --

20        MR. SOLOVAY:  You would, yes.

21        THE COURT:  -- it is not something that I would do in

22 the absence of testimony by Ms. Tane herself.

23        MR. SOLOVAY:  Well, we can -- I can get you other

24 testimony, including Lev's.

25        THE COURT:  No.  I think what you need to do is let

1  the trustee take Ms. Tane's deposition.

2          MR. SOLOVAY:  Yes.

3          THE COURT:  Now, if, at the end of this, if I decide

4  you're right --

5          MR. SOLOVAY:  Yes.

6          THE COURT:  -- I will do the right thing.

7          MR. SOLOVAY:  Okay.

8          THE COURT:  But I'm not prepared to stop a simple

9  discovery process right dead in its tracks to have a pretrial

10  trial --

11          MR. SOLOVAY:  Okay.

12          THE COURT:  -- on a judiciary act claim.  We're going

13  to do this in an efficient way.  The trustee is entitled to

14  take his deposition.  I will hear -- if you -- if there's a

15  trial, I will hear the evidence.  If I decide that you're right

16  and that, based on the evidence I hear at trial, absolutely

17  none of this should have been pursued at all, then I'll do the

18  appropriate thing at that time.  But I'm not going to --

19          MR. SOLOVAY:  May I ask --

20          THE COURT:  -- have two trials of the matter or try

21  to prejudge it.

22          MR. SOLOVAY:  May I ask Your Honor that at that trial

23  you hear that part, as well as the part about Ms. Tane?  I

24  don't have any question that you will quickly dismiss the case

25  against Ms. Tane because even the amount that's asked can't be

right.  She had lost a million dollars, withdrew some, so --

and they kept charging the same amount, and that's not in

dispute.  So the amount that they're asking has to be wrong,

and that -- and I can give you another illustration.  One of

the examples that is also presented by Lev, a client of his by

the way whom I had referred way back, a woman for whom I had

gotten a $5 million recovery or severance pay, and she rippled

through it.  She went through $5 million like a hot knife

through butter.

She had no money left, and they are still bill --

were still billing her, and they were still proceeding, and

they would not have done, except that at the end, Lev finally

showed them that she had no money.  If they got judgment, they

couldn't and wouldn't collect it.  It didn't stop them from --

when they were told originally that she had little to no money

left there, but it did stop them that they weren't going to

collect it.  So I do think Your Honor may find some misconduct

on the part of the trustee's lawyers.

THE COURT:  Okay.  How much is left on your discovery

period in this case?

MR. SOLOVAY:  Mine?

THE COURT:  The --

MR. SOLOVAY:  I don't need any more.  I've got Peter

Lev's deposition, and that's -- and by the way, we have an

interesting article from the Post.  I don't know if Your Honor

1   has seen it, that --

2         MR. WOLF:  Your Honor, I don't think this is

3   appropriate.

4         MR. SOLOVAY:  -- gives additional information, I

5   think rather concrete information about this.

6         THE COURT:  I don't --

7         MR. SOLOVAY:  The reporter did an amazing job.

8         THE COURT:  I don't want to hear --

9         MR. SOLOVAY:  Okay.

10        THE COURT:  I don't want to hear hearsay news reports

11  about this.

12       MR. SOLOVAY:  I understand that, Your Honor, but it

13  is -- I do -- she did an amazing research job, I must say.

14       MR. WOLF:  Well, with regard to discovery, the

15  scheduling order cut off discovery as of the past week.  We had

16  previously noticed the deposition of Ms. Tane.  She has not

17  appeared.  I was told by counsel she was not going to be

18  appearing.

19       MR. SOLOVAY:  Not pending --

20       MR. WOLF:  We also asked for documents to be produced

21  by her which should have been produced over a week ago.  No

22  documents have been produced.  There has been no written

23  objection.  And I'd also like to just note for Your Honor, this

24  motion to dismiss is not really, as I believe Your Honor

25  pointed out, a motion to dismiss.  It does not attack the

allegations in the complaint. But there is an overriding issue
here, and it does pertain, if I may, not just to this
particular proceeding, but to others that may be the subject in
the future motion to dismiss or whatever.

Yes, Mr. Starr is serving a prison term. He did
plead guilty to several counts of mail fraud and related
fraudulent acts. What he pleaded guilty to related almost
primarily, if not exclusively, to the activities of himself
personally and of the debtor entity called Starr Investment
Advisors, LLC, which was a financial advisory firm. He engaged
in putting people's clients into very risky investments. He
may have absconded with some of the money that was supposed to
be made for those investments.

But there was another business of Mr. Starr, and that
is of the debtor, Starr & Company, LLC, which was a legitimate
business. It was an accounting and financial housekeeping
business. Starr & Company had employees who prepared, on
behalf of their clients, annual tax returns, not just for their
individual returns but for their company's returns. A number
of these clients had employees for whom payroll taxes had to be
deducted. Starr & Company employees prepared quarterly memos
to these clients as to how much had to be taken out and
withheld from the salary payments made to these employees. He
helped them with loan -- financial loan applications and did
other financial housekeeping for them because a number of these

clients who did not write their own checks or keep tallies of
their own personal expenses.  Starr & Company did that.

The defendant, Tane, and other defendants may dispute
how much those services were worth, they may dispute the extent
of the services performed, but the fact is that services were
performed, and they were performed for Ms. Tane also.  That's
what is at issue here, and the trustee is not in the business
of trying to extort or coerce monies out of these various
clients.  He's relying on records that he and his accountants
have gone through meticulously and adjusted, where necessary,
to try to claim for those legitimate services that were
performed.

Where there's been an adjustment needed where the
defendant has shown that the services were paid for, the
trustee has either withdrawn the claim or he's adjusted it
downward.  And as Your Honor can see from today from prior
conferences before the Court, he -- his law office and my firm
have settled numerous matters with regard to these various
services.

The trustee is not representing Mr. Starr here.  He
represents the estate and its creditors.  That's who he's
acting for --

THE COURT:  Right.

MR. WOLF:  -- notwithstanding whatever newspapers
counsel here may be referring to.

```
 1              MR. SOLOVAY:  May I --

 2              MR. WOLF:  So I think Your Honor --

 3              THE COURT:  I understand, and I really -- we're

 4  getting into argument that's more appropriate for the trial.

 5              MR. WOLF:  I agree, Your Honor.

 6              THE COURT:  I denied the motion to dismiss.

 7              MR. SOLOVAY:  I just had one comment to make, Your

 8  Honor.

 9              THE COURT:  Okay.

10              MR. SOLOVAY:  First about documents, they have

11  virtually all of documents that Susan Tane has and some of them

12  from -- they have them as exhibits.  They have them already.

13              Secondly, Peter Lev's testimony about the nature of

14  the documents -- second, those documents show that in '07, when

15  Ms. Tane had lost about close to a million, she withdrew, got a

16  new accountant, and had no services of any sort --

17              THE COURT:  Okay, stop.

18              MR. SOLOVAY:  -- and --

19              THE COURT:  I'm not going to hear the merits today.

20              MR. SOLOVAY:  No, that's right, but the merits are

21  clear --

22              THE COURT:  Virtually all documents is not all

23  documents.

24              MR. SOLOVAY:  Pardon me?

25              THE COURT:  Virtually all documents is not all
```



1  documents.

2          MR. SOLOVAY:  That's --

3          THE COURT:  I'm going to direct you --

4          MR. SOLOVAY:  Perhaps, but what is true --

5          THE COURT:  -- to produce --

6          MR. SOLOVAY:  -- what is true is that what he is

7  describing about the books is very, very sharply refuted by

8  Peter Lev, who should be further examined --

9          THE COURT:  That's fine.

10         MR. SOLOVAY:  -- of course, as a witness.

11         THE COURT:  All documents that the trustee has asked

12  for are to be produced by July 8th.  The deposition of Ms. Tane

13  will happen on or before July 22.  I expect you to work

14  together in good faith to get that done.  I want a joint

15  pretrial order on July 31st, and we'll have a final pretrial

16  conference on August 11th and we'll pick a trial date at that

17  time --

18         MR. SOLOVAY:  Okay.

19         THE COURT:  -- if you haven't otherwise resolved

20  this.

21         MR. SOLOVAY:  Will that be on an order?  I hadn't

22  made notes.

23         THE COURT:  I'm sorry?

24         MR. SOLOVAY:  Will those dates be on an order?

25         THE COURT:  Yes, we'll put them in an order.

1        MR. SOLOVAY:  Thanks very much, Your Honor.

2        THE COURT:  Okay.

3        MR. SOLOVAY:  But as I say --

4        MR. WOLF:  Thank you very much, Your Honor.

5        MR. SOLOVAY:  -- we have -- I must tell you we have

6  produced so far virtually all the documents that Susan Tane --

7        THE COURT:  Okay.  Just finish it.  Get them done by

8  July 8th.

9        MR. SOLOVAY:  Thanks, Your Honor.

10        THE COURT:  Okay.  I think that's it.

11        MR. WOLF:  Yes, Your Honor.

12        UNIDENTIFIED:  Thank you, Your Honor.

13        UNIDENTIFIED:  Thank you very much for your time,

14  Your Honor.

15        UNIDENTIFIED:  Thank you.

16      (Concluded at 11:29 a.m.)

17                          *  *  *  *  *

18

19

20

21

22

23

1    **C E R T I F I C A T I O N**

2

3         I, Alicia Jarrett, court approved transcriber,

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter, and to the best of my ability.

7

8

9    *Alicia Jarrett*

10                                      DATE:  July 14, 2015

11   ALICIA JARRETT, AAERT NO. 428

12   ACCESS TRANSCRIPTS, LLC

13

14                  **C E R T I F I C A T I O N**

15

16         I, Lisa Luciano, court-approved transcriber, hereby

17   certify that the foregoing is a correct transcript from the

18   official electronic sound recording of the proceedings in the

19   above-entitled matter.

20

21

22   *Lisa Luciano*

23   LISA LUCIANO, AAERT NO. 327     DATE:  July 15, 2015

24   ACCESS TRANSCRIPTS, LLC

25



**C E R T I F I C A T I O N**

1

2

3       I, Ilene Watson, court-approved transcriber, hereby

4  certify that the foregoing is a correct transcript from the

5  official electronic sound recording of the proceedings in the

6  above-entitled matter.

7

8

9  _____

10 ILENE WATSON, AAERT NO. 447      DATE:  July 15, 2015

11 ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

